Filed 7/3/24  P. v. Kingery CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082519, D082706 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN415759) |
| JAMES CHARLES KINGERY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael D. Washington, Judge.  Affirmed.

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

## INTRODUCTION

In October 1987, the partially nude and lifeless body of 26-year-old Julia Hernandez Santiago was found under an Acacia tree on an ivy-covered hillside in Carlsbad.  She had been raped and strangled.  Her murder remained unsolved for more than 30 years until a hit in the Combined DNA

Index System (CODIS) matched James Charles Kingery's DNA to sperm collected from Santiago's body. In May 2023, a jury convicted Kingery of the first degree murder (Pen. Code,[1] § 187, subd. (a)) and forcible rape (§ 261, former subd. (2)) of Santiago. He was sentenced to a prison term of 25 years to life.

Kingery appeals. His appointed appellate counsel filed an opening brief raising no arguable issues and requesting that we exercise our discretion to review the record for potential issues under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*). We issued an order giving Kingery an opportunity to file his own supplemental brief, but he has not done so. We have independently reviewed the record and find no arguable issue that would result in a modification or reversal of the judgment. Accordingly, we affirm.

BACKGROUND

I.

*Trial Evidence*

At the time of her murder, Santiago worked as a live-in housekeeper at the home of Nessie and Norton Cooper, off Alga Road in the city of Carlsbad. She had been introduced to the Coopers by Celine Asano, an acupuncturist who treated Santiago, free of charge, from time to time for her severe rheumatoid arthritis. Asano described Santiago as a very personable and gentle person, "very discreet, very quiet, [and] very private." Santiago was also, in Asano's view, "handicapped." She had deformities to her hands and joints because of her significant arthritis, which caused her to walk "very slowly" and "very deliberately."

---

[1] Further undesignated statutory references are to the Penal Code.

On October 9, 1987, Santiago took the bus to Asano's office for an afternoon acupuncture appointment. When she left, Santiago told Asano she was going to stop into a Longs Drugstore on her way back to the Coopers' home. Santiago stopped into a Longs Drugstore to drop off film to develop. At some point later, she returned to the Coopers' home and then left again around 6:30 to 7:00 p.m. That was the last time Santiago was seen alive.

Early the next morning, passersby found Santiago's body in an ivy embankment, just off Alga Road near El Camino Real. She was "splayed out" on her back underneath an Acacia tree. With her legs spread "very wide apart," she was clad only in a torn blouse and bra, breasts exposed. Her clothing, purse and shoes were scattered nearby. Her panties were hanging on a tree branch. Bruising to her collarbone and marks on her throat left little doubt in the mind of the homicide detective at the scene that she had been strangled in a violent "rape murder."

The medical examiner concluded Santiago's cause of death was asphyxia due to manual strangulation. Biological evidence was swabbed from the victim's mouth, vaginal, and anal cavities. A "large number of intact and tailless spermatozoa" was present in her vagina, which established the sperm had been deposited within a "short[ ] period of time" from discovery, "[u]sually several hours, rather than days."

At the time, much of this area of Carlsbad was undeveloped. Santiago's body was found in a location adjacent to residential areas near open and vacant lots. The morning she was discovered, police spoke to John Moderzinsky who was near the crime scene under police control. He told an officer he was in the area at approximately 9 p.m. on October 9, 1987, getting water out of a spigot for his van, when he heard a noise in the bushes. He saw a person lying in the ivy underneath the Acacia tree and asked if they

3

were okay. He could not tell if it was a man or a woman, but they "[s]at up, put their arms either on their knee or their chest area and didn't respond to him." He thought the person was intoxicated and walked away.

The investigation went cold without any leads. In 2004, a criminalist developed a DNA profile from the vaginal and rectal slides taken from Santiago's body and entered it into CODIS. The criminalist concluded the spermatozoa from the vaginal and rectal slides were from the same unknown male contributor.

In March 2020, a "metal pole" and a buccal swab was recovered from Kingery by the San Diego County Sheriff's Department.[2] A DNA profile of Kingery was then developed from the buccal swab and uploaded to CODIS. Two months later, in May 2020, the CODIS system matched Kingery's DNA profile to the unknown male DNA profile in Santiago's murder.

As a result of the CODIS hit, further DNA testing was done. Kingery's DNA from the metal pole was compared to the sperm DNA from Santiago's vaginal and rectal slides. Kingery was included by random match probability[3] of 1 in 26 trillion as the contributor of the sperm DNA from the vaginal sample, and 1 in 75 trillion as the contributor of the sperm DNA from

---

[2]     Kingery was arrested on March 5, 2020 for possession of a billy club (§ 22210). The billy club was a metal pole, approximately 22 inches long and one-half inch in diameter. One end was wrapped in black electrical tape. The trial court granted the defense motion to exclude testimony of King's arrest or reference to the item as a billy club or weapon. The parties entered a stipulation that a "metal pole" and buccal swab had been recovered from Kingery.

[3]     Random match probability means the probability that a randomly selected person would have the same DNA profile as that found in the evidence sample.

the rectal sample. DNA from Santiago's bra was also analyzed. In a mixed DNA profile, Santiago was determined to be a 70 percent contributor and Kingery a 20 percent contributor. The probability of this match was 1 in "four million three hundred thousand," which is "very strong support for inclusion."

Kingery testified in his own defense. He claimed he met Santiago at the Crazy Burro, a Mexican restaurant he frequented in 1987. The two "hit it off" and "[s]parks were flying." It was about 4:30 to 5:30 p.m. They left together and sat in his car to talk. They ended up having consensual sex. They talked about seeing each other again and he told her she could find him at the Crazy Burro. He offered her a ride home but she said she would walk home. He denied raping or killing her or ever being on the hill where she was found dead.

The defense had filed a motion in limine to present evidence of third party culpability, contending the evidence tended to inculpate Moderzinsky. The trial court granted the motion. At trial, however, the jury heard testimony that Moderzinsky was excluded as a possible contributor of the DNA obtained from Santiago's bra; excluded as a possible contributor of the sperm DNA from the vaginal and rectal swabs of Santiago; and excluded as a possible contributor of the non-sperm fraction of the DNA profile obtained from the vaginal swab. Kingery, on the other hand, was included as a possible contributor of the non-sperm fraction from the vaginal swab. The non-sperm fraction from the rectal swab was determined to be a single source female DNA profile which included the victim.

## II.

### *Verdict and Sentencing*

The jury convicted Kingery of first degree murder (§ 187, subd. (a); count 1) and forcible rape (§ 261, former subd. (2); count 2). In July 2023, the trial court sentenced Kingery to the midterm of six years on count 2 and a consecutive sentence of 25 years to life on count 1. In August, the People determined the rape charge was beyond the statute of limitations. At the People's request, the trial court recalled the sentence, vacated sentence on count 2, and ordered the indeterminate sentence on count 2 remain. The People dismissed count 2.

## III.

### *Pretrial Motion to Suppress Evidence*

Before trial, Kingery filed a motion to suppress all evidence seized from his vehicle during his March 2020 detention and arrest for possession of a billy club (see fn. 2). The motion was heard concurrently with the preliminary hearing. Defense counsel clarified Kingery was not contesting the stop nor seeking to exclude the DNA evidence subsequently obtained. Rather, he contested only the search of the vehicle. The People presented the following evidence to support the lawfulness of the vehicle search.

On March 5, 2020, sheriff's deputies received a radio call of a man, later determined to be Kingery, driving a truck erratically around the intersection of Poway and Pomerado. Kingery pulled into a Circle K gas station and was "screaming and throwing things." The deputies initiated a traffic stop. When Kingery came to a stop, one deputy approached him on the driver's side and asked for his driver's license. Kingery was alone. Within minutes of the stop, the second deputy who had approached on the passenger side observed in clear view a "sap or a bat protruding from between the

6

driver's seat and the center console." Kingery was then removed from the vehicle and placed in handcuffs for officer safety. A gloved deputy removed the "baton or bat of some sort" from the vehicle. It was 22 inches long, about half an inch in diameter and weighed 1 pound and 8.4 ounces. It appeared to be a deadly or dangerous weapon to the deputies. Kingery was then arrested and placed in a patrol vehicle. In a search of the vehicle incident to his arrest, deputies found a silver container with a substance that tested positive for methamphetamine in the center console.

The trial court denied the defense motion to suppress, finding the billy club ("a readily usable dangerous weapon") was seen in plain view during a lawful traffic stop and justified Kingery's removal and the weapon's removal for officer safety.

DISCUSSION

Appointed appellate counsel filed a brief summarizing the facts and proceedings below, arguing no specific contentions as grounds for relief, and asking this court to review the entire record for error as mandated by *Wende, supra*, 25 Cal.3d 436. To assist the court in its review, and in compliance with *Anders, supra*, 386 U.S. 738, counsel identified the following possible, but not arguable, issues: (1) Whether the trial court erred by denying Kingery's motion to suppress? (2) Whether Kingery's conviction for first degree murder was supported by substantial evidence?

We have considered the potential issues identified by Kingery's appellate counsel and conducted an independent review of the entire record for other arguable issues under *Wende* and *Anders*. Based on our review, we conclude there is no arguable issue that would result in a modification or reversal of the judgment. Kingery is competently represented in this appeal. Accordingly, we affirm the judgment. (*Wende, supra*, 25 Cal.3d at pp. 441–

7

442.)

DISPOSITION

The judgment is affirmed.

DO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


BUCHANAN, J.

8